# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF<br>THE UNITED STATES OF AMERICA, *et al.*, | * | |
| | * | |
| Plaintiffs, | | Civil Action No. AW-08-3444 |
| | * | |
| v. | | **COURT ACTION REQUESTED** |
| | * | **PRIOR TO SEPTEMBER 8, 2009** |
| JANET NAPOLITANO, *et al.*, | | |
| | * | |
| Defendants. | | |
| * * * * * | | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL

    Lawrence Z. Lorber (Bar No. 15110)
    Malcolm J. Harkins III
    James F. Segroves (Bar No. 17268)
    PROSKAUER ROSE LLP
    1001 Pennsylvania Avenue, NW
    Suite 400 South
    Washington, DC 20004-2533
    202.416.6800
    202.416.6899 (fax)

    David M. Grunblatt
    PROSKAUER ROSE LLP
    One Newark Center
    Newark, NJ 07102-5211
    973.274.3200
    973.274.3299 (fax)

*Counsel for Plaintiffs Chamber of Commerce of the United States of America; Associated Builders and Contractors, Inc.; Society for Human Resource Management; American Council on International Personnel; and HR Policy Association*

[*Additional Counsel Listed on Signature Page*]

## **TABLE OF CONTENTS**

Page

BACKGROUND ..................................................................................................................1

ARGUMENT ......................................................................................................................2

    I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL ...............3

    II.    MANY OF PLAINTIFFS' MEMBERS WILL BE IRREPARABLY HARMED ABSENT AN INJUNCTION PENDING APPEAL ...................................................................5

    III.    DEFENDANTS WILL NOT BE SUBSTANTIALLY HARMED BY AN INJUNCTION PENDING APPEAL ..................................................................................................9

    IV.    AN INJUNCTION PENDING APPEAL IS IN THE PUBLIC INTEREST ...............................11

CONCLUSION ..................................................................................................................12

Plaintiffs Chamber of Commerce of the United States of America; Associated Builders and Contractors, Inc.; Society for Human Resource Management; American Council on International Personnel; and HR Policy Association (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Emergency Motion for an Injunction Pending Appeal.

## BACKGROUND

On August 25, 2009, the Court signed a memorandum opinion deciding several questions of first impression relating to the authority of the President of the United States and various other federal officials under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. § 1324a note; the Federal Property and Administrative Services Act of 1949, 40 U.S.C. §§ 101-1315; and the Office of Federal Procurement Policy Act, 41 U.S.C. §§ 403-438. *See Chamber of Commerce of the U.S. v. Napolitano*, ___ F. Supp. 2d ___, Civil Action No. AW-08-3444, 2009 WL 2632761 (D. Md. Aug. 25, 2009). On August 26, 2009, the Court entered its memorandum opinion and a final order denying Plaintiffs' motion for summary judgment and granting Defendants' cross-motion for summary judgment. On August 31, 2009, Plaintiffs noticed an appeal of this Court's final order to the United States Court of Appeals for the Fourth Circuit.

Because the regulations at issue in this case will go into effect nationwide on September 8, 2009, Plaintiffs have filed an emergency motion seeking an injunction pending their appeal to the Fourth Circuit. Beginning September 8, 2009, all federal contracting officers must do two things. First, they must include the E-Verify contract clause in solicitations for new contracts. Notice Regarding Employment Eligibility Verification, 74 Fed. Reg. 26,981 (June 5, 2009) (explaining September 8, 2009 enforcement of the Final Employment Eligibility Verification Rule ("Final Rule"), 73 Fed. Reg. 67,651 (Nov. 14, 2008)). Second, and perhaps more importantly for present purposes, all federal contracting officers

must "modify, on a bilateral basis, *existing* indefinite-delivery/indefinite-quantity contracts . . . to include the clause for future orders if the remaining period of performance extends beyond March 8, 2010, and the amount of work or number of orders expected under the remaining performance period is substantial." *Id.* (emphasis added). Therefore, the impact of the Final Rule's September 8, 2009 enforcement deadline will be immediate and widespread unless this Court grants Plaintiffs' motion for an injunction pending appeal.

## ARGUMENT

Rule 62(c) instructs that a district court may issue an injunction pending appeal "on terms for bond or other terms that secure the opposing party's rights."[1] A district court considers four factors when deciding whether to grant an injunction pending appeal: (1) whether the movant has demonstrated that it is likely to succeed on the merits of its appeal, (2) whether the movant will be irreparably harmed absent an injunction, (3) whether the non-moving party will be substantially harmed by an injunction, and (4) whether an injunction is in the public interest. *See Long v Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (Winter, J., in chambers); *Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980) (Kaufman, J.), *aff'd*, 649 F.2d 863 (4th Cir. 1981) (unpublished table decision); *accord Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 849-50 (9th Cir. 2009) (per curiam) (granting injunction pending appeal after applying similar four-factor test). These four factors should be considered individually and then weighed together in order to determine whether an injunction is warranted. *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990) (citing *Goldstein*, 488 F. Supp. at 176).

---

[1] The Federal Rules of Appellate Procedure instruct that a party "must ordinarily move first in the district court" for an order "granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1); *see also* 4th Cir. R. 8 ("If an application to the district court for temporary relief pending appeal is not practicable, counsel must make a specific showing of the reasons the application was not made to the district court in the first instance.").

2

As set fourth below, when considered individually and weighed together, all four factors counsel that an injunction pending appeal should be granted in this unique case raising difficult legal questions of first impression that are of significant, national importance, the answers to which affect millions of individuals and tens of thousands of businesses throughout the United States.

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL

As this Court explained in *Goldstein*, the "likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." *Goldstein*, 488 F. Supp. at 172. When there is "little doubt that at least some of the issues raised in [a case] present serious questions of first impression," the likelihood-of-success factor is satisfied even if the district court possesses a "strong belief as to the correctness of its" prior ruling. *Id.* at 175. As another district court within the Fourth Circuit explained: "To find that plaintiffs have a strong likelihood of success on appeal, the Court need not harbor serious doubts concerning the correctness of its decision. Otherwise, relief under [R]ule 62(c) would rarely be granted. What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the *status quo* should be maintained." *Peck v. Upshur County Bd. of Educ.*, 941 F. Supp. 1478, 1481 (N.D. W. Va. 1996) (citing *Goldstein*, 488 F. Supp. at 172-73).

In *Goldstein*, for example, this Court was asked to decide whether the Federal Government, acting pursuant to its taxing authority, could issue regulations establishing an exclusive list of bottle sizes that could be used in bottling distilled spirits in Maryland for sale within Maryland's borders. *See Goldstein*, 488 F. Supp. at 157. Maryland officials and various private corporations filed two separate lawsuits against federal officials to enjoin enforcement of the federal regulations, which conflicted with a

Maryland regulation specifically authorizing the use of certain bottle types prohibited by the federal regulations. *See id.* Although the federal regulations were schedule to take effect on January 1 the next year, the defendants voluntarily agreed to stay the regulations' enforcement until after this Court ruled on the merits of the plaintiffs' legal claims. *See id.*

The plaintiffs' principal argument was that the Twenty-First Amendment to the United States Constitution prohibited the Federal Government from preventing the use of certain bottles sizes when liquor is bottled solely for intrastate use. *See id.* at 162. This Court eventually rejected the plaintiffs' legal challenge after examining a long line of Supreme Court and circuit courts decisions. *See id.* at 168-71.

Shortly thereafter, the plaintiffs filed a motion under Rule 62(c) asking this Court to issue an injunction pending their appeal to the Fourth Circuit. *See id.* at 171. In granting the injunction, the Court emphasized that it had no doubt that its previous ruling on the merits was correct. *See id.* at 172-75. "However, despite this Court's strong belief as to the correctness of its" earlier opinion, the Court explained there was "little doubt that at least some of the issues raised in these cases present serious questions of first impression." *Id.* at 175. Therefore, this Court concluded that the plaintiffs had satisfied the likelihood-of-success factor. *Id.*

The same is true of this case. Although Plaintiffs respectfully disagree with this Court's published opinion, as in *Goldstein*, there is little doubt that many of the issues raised by this case present serious questions of first impression. For example, this Court is the first and only court to decide (1) the scope of IIRIRA § 402(a) as it relates to the Federal Government and (2) whether Executive Order 13,465 is a proper exercise of the President's Procurement Act authority. This Court's opinion is also the first such ruling in the Fourth Circuit to interpret the meaning of the Procurement Policy Act's no-

4

tice-and-comment requirements. As such, this case presents serious questions of first impression and, as discussed below, the equities of the case suggest that the *status quo* should be maintained pending Plaintiffs' appeal.

## II.     MANY OF PLAINTIFFS' MEMBERS WILL BE IRREPARABLY HARMED ABSENT AN INJUNCTION PENDING APPEAL

The second factor courts are to consider in deciding a Rule 62(c) motion is whether the movant will be irreparably harmed absent an injunction pending appeal. *See Long*, 432 F.2d at 979; *Goldstein*, 488 F. Supp. at 172. As this Court explained in *Goldstein*, the word "irreparable" in the context of suits against federal officers means "without adequate remedy against the federal government, should plaintiffs ultimately prevail" on appeal. *Goldstein*, 488 F. Supp. at 17; *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) ("Irreparable harm is suffered when monetary damages are difficult to ascertain or are inadequate."); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 361 (4th Cir. 1991) (finding that the absence of an effective money-damages remedy against government officials counsels in favor of finding that a plaintiff will suffer irreparable harm if an injunction is not granted).

The Fourth Circuit's decision in *Rum Creek* is instructive in this regard. There, a mining company filed suit against the state police, arguing that its refusal to enforce certain laws against striking workers violated the company's constitutional rights and therefore was actionable under 42 U.S.C. § 1983. *See* 926 F.2d at 354. The district court refused to issue a preliminary injunction. *See id.* On appeal, the Fourth Circuit found that the district court had erred. *See id.* Among other things, the Fourth Circuit held that the lack of an adequate money-damages remedy against the police meant that the "showing necessary to meet the irreparable harm requirement for a preliminary injunction should be less strict than in other instances where future monetary remedies are available." *Id.* at 362. This was true

even though the mining company could obtain declaratory and injunctive relief against the police at a later date. *See id.* In addition, the fact that the mining company could seek monetary damages from individual striking workers did not affect the Fourth Circuit's conclusion, for such actions would "not redress the § 1983 cause of action." *Id.*[2]

The Ninth Circuit's recent decision in *California Pharmacists Ass'n* is to the same effect. There, various hospitals appealed a district-court ruling that concluded they were not entitled to preliminary injunctive relief to stop California from reducing the hospitals' Medicaid reimbursement rates. *See* 563 F.3d at 849. The district court had denied the plaintiff-hospitals' request for preliminary injunctive relief on the ground that the plaintiff-hospitals had failed to demonstrate irreparable harm would be caused in the absence of an injunction. *See id.* The plaintiff-hospitals appealed the district court's ruling to the Ninth Circuit and later asked the court of appeals to issue an emergency injunction to stop the rate cuts while the Ninth Circuit considered the merits of their appeal. *See id.*

In granting the emergency injunction, the Ninth Circuit found that the plaintiff-hospitals had demonstrated they were likely to suffer irreparable harm in the absence of preliminary injunctive relief. *See id.* at 850-52. Although the court of appeals recognized the general rule that financial harm does not constitute irreparable harm, the Ninth Circuit explained that the underlying basis for the general rule was that such injuries can later be remedied by a money-damages award. *See id.* at 851-52. The plaintiff-hospitals, however, argued that they could not obtain a money-damages award against state officials be-

---

[2] At the time *Rum Creek* was decided, a recent Supreme Court opinion suggested that money damages were not recoverable in a § 1983 action against individual state officials. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Several months after *Rum Creek* was decided, however, the Supreme Court held that state officials could be sued in their individual capacities for money damages under § 1983. *See Hafer v. Melo*, 502 U.S. 21, 23 (1991). That fact does not affect the underlying logic of *Rum Creek*: namely, that the threat of irreparable harm exists when a plaintiff will not have an adequate money-damages remedy against governmental defendants.

6

cause of the Eleventh Amendment to the United States Constitution, which generally precludes federal courts from ordering States, state agencies and state employees sued in their official capacities to pay money damages.  *See id.* at 852.  The Ninth Circuit agreed with the plaintiff-hospitals' argument, explaining: "Because the economic injury doctrine rests only on ordinary equity principles precluding injunctive relief where a remedy at law is adequate, it does not apply where, as here, the [plaintiff-hospitals] can obtain no remedy in damages against the [S]tate because of the Eleventh Amendment." *Id.*

The case before this Court presents a similar situation.  According to the Federal Government, implementation of the Final Rule will cost government contractors and subcontractors approximately $190 million in startup costs during the first fiscal year in which the Final Rule is in effect.  Final Rule, 73 Fed. Reg. at 67,702.[3]  The Final Rule also estimates $246 million in combined costs to government contractors, subcontractors and their employees during the first fiscal year in which the Final Rule is in effect, with a ten-year cost of approximately $1.1 billion.  *Id.*  These costs are more than just theoretical.  As exemplified by the declarations filed in support of Plaintiffs' motion for summary judgment (which Defendants made no effort to refute), government contractors and subcontractors throughout the United States will incur significant costs if the Final Rule is enforced beginning September 8, 2009.  *See, e.g.*, Declaration of Mario A. DiFranco ¶¶ 22-32 (Docket No. 18-11) (filed Jan. 14, 2009) (describing finan-

---

[3] The Final Rule defines "startup costs" as follows: "Employers must register to use the E-Verify system and sign a Memorandum of Understanding with USCIS and SSA.  Employers will also incur costs such as reviewing and updating USCIS Form I–9 (Employment Eligibility Verification) for existing employees and potentially a cost to modify an existing personnel or payroll system to be able to record the E-Verify status of their employees.  A very small number of employers may need to purchase a computer, internet connection and printer for their hiring site if that hiring site does not already have internet access."  Final Rule, 73 Fed. Reg. at 67,702.

cial and business impact imposed if Landover, Maryland-based Quality Support, Inc. is contractually obligated to participate in E-Verify); Declaration of Margie Jones ¶¶ 17-24 (Docket No. 18-12) (filed Jan. 14, 2009) (same with respect to Intel Corporation).

However, in the event Plaintiffs succeed on their appeal to the Fourth Circuit, Plaintiffs' members will not have access to a money-damages remedy to compensate them for the time and money spent on complying with the Final Rule and the contract provision it will add to countless government contracts and subcontracts. By its own terms, the Administrative Procedure Act ("APA") only provides for declaratory and injunctive relief. *See* 5 U.S.C. § 703. The APA also does not waive the Federal Government's sovereign immunity with respect to actions seeking monetary relief. *See id.* § 702. Furthermore, even if the Fourth Circuit concludes that the Final Rule or other aspects of Defendants' conduct were illegal, tens of thousands of government contractors and subcontractors will be unable to unilaterally withdraw from participation in E-Verify because, by the time the Fourth Circuit issues its decision, most government contractors and subcontractors will be *contractually obligated* to participate in E-Verify through operation of the Final Rule. In other words, an appellate ruling striking down the Final Rule will not automatically strike the E-Verify contract provision from every contract and subcontract in which it exists.

Therefore, like the situation presented by *Rum Creek* and *California Pharmacists Ass'n*, Plaintiffs' members will suffer irreparable harm in the absence of an injunction pending appeal. In addition, as explained by the brief filed by *amici curiae*, enforcement of the Final Rule poses significant challenges for thousands of individual employees who will be burdened by the E-Verify program and who, *amici* argue, will face an increased risk of employment discrimination. *See* Memorandum of *Amici Curiae* National Immigration Law Center, Mexican-American Legal Defense and Education Fund, and

American Civil Liberties Union in Support of Plaintiffs' Motion for Summary Judgment at 10 (Docket No. 42-2) (filed Aug. 3, 2009).

### III. DEFENDANTS WILL NOT BE SUBSTANTIALLY HARMED BY AN INJUNCTION PENDING APPEAL

The third factor courts are to consider in deciding a Rule 62(c) motion is whether the non-moving party will be substantially harmed by an injunction pending appeal. *See Long*, 432 F.2d at 979; *Goldstein*, 488 F. Supp. at 172. In that regard as well, this case is substantially similar to the situation presented by *Goldstein*.

Again, the federal-defendants in *Goldstein* had voluntarily agreed to stay enforcement of the challenged regulations until after this Court ruled on the merits of the plaintiffs' legal claims. *See* 488 F. Supp. at 157. When the federal-defendants later opposed the plaintiffs' motion for an injunction pending appeal, the Court explained that the federal-defendants' previous agreement to postpone enforcement of the challenged regulations counseled in favor of granting an injunction pending appeal. *See id.* at 175 ("Such postponement [during district-court proceedings] seemingly did not cause any irreparable injury to defendants."). Accordingly, this Court found that the federal-defendants would not be substantially harmed by an injunction pending appeal. *See id.*

Likewise, in this case, Defendants have delayed enforcement of the Final Rule four times since Plaintiffs commenced their lawsuit on December 23, 2008. *See* Final Rule, 73 Fed. Reg. 67,651 (original enforcement deadline of January 15, 2009), *enforcement delayed by* 74 Fed. Reg. 1937 (Jan. 14, 2009) (until February 20, 2009), *enforcement further delayed by* 74 Fed. Reg. 5621 (Jan. 30, 2009) (until May 21, 2009), *enforcement further delayed by* 74 Fed. Reg. 17,793 (Apr. 17, 2009) (until June 30, 2009), *and enforcement further delayed by* 74 Fed. Reg. 26,981 (June 5, 2009) (until September 8, 2009). Furthermore, each time Defendants asked this Court for more time to evaluate the Final Rule,

9

Plaintiffs consented to the delay. *See* Defendants' Consented-To Emergency Motion for a Stay of Proceedings to Permit the Newly Inaugurated Administration an Opportunity to Review the Final Rule at 3 (Docket No. 20) (filed Jan. 27, 2009) (arguing that "[d]enial of the requested relief will prejudice Defendants by denying the new Administration sufficient time to review the Final Rule before taking a position with the Court"); Defendants' Consent Motion Seeking Extension of Stay at 3 (Docket No. 22) (filed Apr. 17, 2009) (same); Defendants' Consent Motion for Extension of Time of Stay at 3 (Docket No. 24) (filed May 29, 2009) (same).

In total, Defendants received almost six months to evaluate the Final Rule, during which time litigation in this case was stayed in its entirety. There is no reason to believe that a delay of a few months more will substantially injure Defendants as Plaintiffs ask the Fourth Circuit to address the important legal questions raised by this case. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("A mere assertion of delay does not constitute substantial harm.").

Should the Court deem it necessary to its granting an injunction pending appeal, if directed to do so, Plaintiffs will seek an expedited briefing schedule before the Fourth Circuit in order to minimize any delay. *See* 4th Cir. R. 12(c) ("The Court on its own motion or on motion of the parties may expedite an appeal for briefing and oral argument. Any motion to expedite should state clearly the reasons supporting expedition, the ability of the parties to present the appeal on the existing record, and the need for oral argument."); *see also Goldstein*, 488 F. Supp. at 176 n.5 (explaining that, in proceedings on a successful motion for an injunction pending appeal, "counsel for plaintiffs agreed to comply with as reasonably fast briefing and oral argument schedules as the government desires and as the Fourth Circuit establishes. The parties have already fully briefed the legal issues in the course of their presentations to this Court. Thus, all counsel should be able to submit briefs and prepare for oral argument on a rapid basis.").

## IV.  AN INJUNCTION PENDING APPEAL IS IN THE PUBLIC INTEREST

The fourth and final factor courts are to consider is whether an injunction pending appeal is in the public interest. *See Long*, 432 F.2d at 979; *Goldstein*, 488 F. Supp. at 17. The Fourth Circuit has not issued much in the way of guidance regarding the public-interest factor. *See Rum Creek*, 926 F.2d at 366 ("The public interest factor does not appear always to be considered at length in preliminary injunction analyses."). That being said, this Court's decision in *Goldstein* indicates that the brief delay Plaintiffs seek, which will benefit the greatest number of persons—approximately 168,624 contractors and subcontractors and roughly 3.8 million employees, according to the Final Rule, 73 Fed. Reg. at 67,702—counsels that the public interest lies in granting an injunction pending Plaintiffs' appeal.

Furthermore, the likelihood that legislative action will be taken during the coming weeks to resolve this controversy also counsels that the public interest lies in granting an injunction pending appeal. The statutory authority for E-Verify is set to expire on September 30, 2009. *See* Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, div. J, § 101, 123 Stat. 524, 988. Congress is currently considering the Department of Homeland Security's fiscal year 2010 appropriations bill, which would not only extend the life of E-Verify, but would require government contractors to participate in E-Verify. *See* H.R. 2892, 111th Cong. § 545 (as passed by the Senate on July 9, 2009). The version of House Bill 2892 that previously passed the House of Representatives does not include language requiring contractors to participate in E-Verify. *See* H.R. 2892, 111th Cong. (as passed by the House on June 24, 2009). The Senate has requested a conference with the House to resolve differences in the two different versions of House Bill 2892 and appointed conferees for that purpose. *See* 155 Cong. Rec. S7311-12 (daily ed. July 8, 2009). The House, which has not yet appointed conferees, is scheduled to return from its summer re-

cess the same day federal contracting officers are required to enforce the Final Rule (i.e., September 8, 2009). *See* H.R. Con. Res. 172, 111th Cong. (2009).

In all likelihood, congressional action on House Bill 2892 will be completed prior to the October 1, 2009 start of federal fiscal year 2010. Therefore, granting the requested injunction will give Congress the opportunity to address many of the core legal questions raised by this case.[4]

## CONCLUSION

For the foregoing reasons, good cause exists to grant a Rule 62(c) injunction in order to maintain the *status quo* pending Plaintiffs' appeal to the Fourth Circuit. Because the Final Rule goes into effect on September 8, 2009, Plaintiffs respectfully request that the Court take action on their motion prior to that date.

Dated: September 1, 2009

Respectfully submitted,

PROSKAUER ROSE LLP

*Of Counsel for Plaintiff Chamber of Commerce of the United States of America*:

Robin S. Conrad[*]
NATIONAL CHAMBER LITIGATION CENTER, INC.
1615 H Street, NW
Washington, DC 20062-0002
202.463.5337
202.463.5346 (fax)

By:    s/Lawrence Z. Lorber
Lawrence Z. Lorber (Bar No. 15110)
Malcolm J. Harkins III[*]
James F. Segroves (Bar No. 17268)
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

---

[4] Rule 62(c) provides that a district court may grant an injunction pending appeal "on terms for bond *or* other terms that secure the opposing party's rights." (Emphasis added.) Plaintiffs respectfully submit that no bond should be required in this case since the Court did not award Defendants money damages or other financial relief.

*Of Counsel for Plaintiff Associated Builders and Contractors, Inc.*:

Robert A. Hirsch[*]
ASSOCIATED BUILDERS
AND CONTRACTORS, INC.
4250 N. Fairfax Drive, 9th Floor
Arlington, VA 22203
(703) 812-2039
(703) 812-8202 (fax)

*Of Counsel for Plaintiff
HR Policy Association*:

Daniel V. Yager[*]
HR POLICY ASSOCIATION
1100 13th Street, NW, Suite 850
Washington, DC 20005
(202) 789-8670
(202) 789-0064 (fax)

David M. Grunblatt[*]
One Newark Center
Newark, NJ 07102-5211
973.274.3200
973.274.3299 (fax)

*Counsel for Plaintiffs Chamber of Commerce of the United States of America; Associated Builders and Contractors, Inc.; Society for Human Resource Management; American Council on International Personnel; and HR Policy Association*

[*]*Admitted Pro Hac Vice*

13